# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Ras Green (B-32334), <br>     Plaintiff, <br><br> v. <br><br> Randy Pfister, et al., <br>     Defendants. | Case No. 18 C 6100 <br><br> Judge Rebecca R. Pallmeyer |

## ORDER

Defendant's motion to dismiss [22] is granted. Plaintiff's complaint is dismissed as untimely. The dismissal is with prejudice, and final judgment shall enter for Defendant.

## STATEMENT

Plaintiff Ras Green, a Stateville Correctional Center inmate proceeding *pro se*, initiated this 42 U.S.C. § 1983 suit against former Stateville Warden Randy Pfister, two Stateville correctional officers, and Dr. Obaisi (Stateville's former medical director, now deceased). Green seeks damages for injuries sustained when a groundhog bit and scratched him on August 3, 2016. On initial review, the court dismissed Dr. Obaisi and the two correctional officers, but allowed the complaint to proceed against Warden Pfister, who allegedly ignored Stateville's groundhog, skunk, and raccoon infestation problem leading up to the August 3, 2016 incident. Because Green filed his complaint on September 6, 2018, more than two years after the incident, Pfister moves to dismiss this suit as untimely. For the reasons stated herein, the motion is granted.

### Green's Claim is Untimely

"A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If [a complaint's] allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."). When considering a motion to dismiss, courts "accept the well-pleaded facts in the complaint as true," *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), "draw all reasonable inferences from those facts in favor of the plaintiff," *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015), and construe complaints filed by pro se litigants liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). When addressing a motion to dismiss, the Court must determine if the complaint's "allegations [are] enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Green's complaint, presumed true at this stage, alleges the following. Groundhogs, skunks, and raccoons "roam[ ] freely throughout Stateville." (Complaint [1], at 4.) On August 3, 2016, as Green and other inmates were being escorted to the dining hall, several groundhogs were near the pathway. Another inmate picked up one of the groundhogs and carried it with him, "pointing it at other inmates." As he did so, the groundhog "broke free from the inmate's hands and latched on to the plaintiff['s] arm, [ ] biting and scratching his arm and hand." (*Id.* at 5.) Neither

of the two officers escorting inmates that day prevented the inmate from carrying the groundhog, and neither officer sent Green for immediate medical attention for his bite and scratches.  (*Id.* at 5-6.)  Later, Green's unit officer sent him to the healthcare unit where he received a tetanus shot and antibiotics, but no tests for rabies or hepatitis. (*Id.* at 6-7.)  Green filed his complaint and initiated this suit on September 6, 2018.

Section 42 U.S.C. § 1983 itself does not have a statute of limitations, but instead adopts the limitations period of the state where the claim arose.  Green's § 1983 claim is thus "subject to the two-year statute of limitations that Illinois provides for personal injury actions, 735 ILCS 5/13–202." *Bryant v. City of Chicago*, 746 F.3d 239, 241 (7th Cir. 2014). Although state law sets the length of the limitations period for a § 1983 claim, federal law governs when the claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[T]he standard rule [is] that [accrual occurs] when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Id.* (third alteration in original) (citations omitted). This occurs "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *Tate v. Sheahan*, No. 17 C 997, 2019 WL 2248543, at *1 (N.D. Ill. May 24, 2019).

Green's allegations demonstrate that he was aware of his claim against Pfister at the time of the groundhog incident on August 3, 2016.  According to the complaint, outdoor rodents had been at "Stateville for so many years" before the biting incident that signs should have been posted, warning inmates against picking them up, and prison healthcare personnel should have known better how to treat a person bitten by one "these wild animals." (*Id.*)   Green's claim thus accrued on August 3, 2016, and he could have asserted his claim—that "Defendant [Pfister] turn[ed] a blind eye to these conditions that caused the plaintiff to be bitten by a wild animal"—at that time. (*Id.* at 7.)[1]

**<u>Continuing Violation Doctrine Does Not Apply Here</u>**

Green's only response to timeliness issue is a contention that Pfister's refusal to address the outdoor rodent infestation adequately was a continuing violation, meaning that Green's claim continued for as long as Pfister deliberately avoided the problem. (Response [29].)  "For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (claim of excessive lockdowns asserted a continuing violation and "[t]he statute of limitations began running from the last date of lockdown"); *see also Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (failure to treat an inmate's hernia was a continuing

---

[1]  The court recognizes that the limitations period is tolled while an inmate exhausts administrative remedies, which is required before bringing suit.  *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); 42 U.S.C. § 1997e(a).  Attached to Green's complaint is a copy of his grievance filed on August 7, 2016 about the August 3, 2016 incident. (Compl. [1], at 19-20.)  Green's grievance was addressed by a counselor on August 18, 2016, and there is no indication Green pursued the grievance further.  (*Id.*)  In setting the briefing schedule on Pfister's motion to dismiss [26], the court  it specifically invited Green to provide information about his exhaustion of administrative remedies.   Green's response includes copies of the grievance and response, showing that the grievance process lasted no longer than 11 days.  That means that the limitations period was extended only until August 15, 2018, still three weeks before the date on which he filed his complaint.

violation, and plaintiff's claim accrued when he left the prison and thus was no longer subject to the constitutionally inadequate medical care). As the Seventh Circuit recently explained:

> The continuing violation doctrine . . . is aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time; the doctrine serves that end by treating the defendant's misconduct as a continuing wrong and deeming an action timely so long as the last act evidencing a defendant's violation falls within the limitations period.

*United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019). Phrased differently, courts consider a violation continuing where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319 ("every day that the defendants ignored the plaintiff's request for treatment increased his pain," and every day created a new claim).

In order for Pfister's alleged inaction to the outdoor rodent problem to be a continuing violation, Green must be able to show that he had a new constitutional claim "every day that [Pfister] ignored" the problem. *Heard*, 253 F.3d at 319; *see also Turley*, 729 F.3d at 651. Although Green attempts to characterize the outdoor pest problem as a continuing violation, the harm he identifies relates directly to the August 3, 2016 groundhog-bite incident; as Green puts it: "Defendant [Pfister] turn[ed] a blind eye to these conditions that caused the plaintiff to be bitten by a wild animal." ([1], at 7.) Apart from the injuries Green sustained on August 3, 2016, neither his complaint, nor his response to the motion to dismiss, identifies any harm or significant risk of harm. An Eighth Amendment claim requires allegations of: (1) an objectively serious condition that results "'in the denial of 'the minimal civilized measure of life's necessities,'" (2) a defendant's deliberate indifference to the condition, and (3) "some cognizable harm." *Gray v. Hardy*, 826 F.3d 1000, 1005-06 (7th Cir. 2016) (quoted case omitted). Prolonged exposure to a pest infestation can give rise to a constitutional claim. *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). But this is because the prolonged exposure itself, even in the absence of a physical injury, is harmful. *See Bentz v. Hardy*, 638 F. App'x 535, 538 (7th Cir. 2016) ("depending upon the extent, duration, and kind of infestation an inmate was made to endure, a trier of fact still may reasonably find that an Eighth Amendment violation occurred even without a showing of physical harm") (citing *Thomas*, 697 F.3d 612, 614). In short, there must be some showing of "harm, be it physical injury, psychological harm, or 'hazard, or probabilistic harm.'" *Boclair v. Godinez*, No. 13 C 08630, 2017 WL 1427069, at *6 (N.D. Ill. Apr. 21, 2017) (quoting *Thomas*, 697 F.3d at 614-15); *see also Murithi v. Hardy*, No. 13 C 00599, 2016 WL 890695, at *8 (N.D. Ill. Mar. 9, 2016). Infestations of rodents and cockroaches in prison kitchens or cells can constitute such harm. *See Thomas v. Illinois*, 697 F.3d at 615; *Byrd v. Hobart*, 761 F. App'x 621, 622 (7th Cir. 2019). The presence of groundhogs, skunks, and raccoons in a prison yard are obviously unpleasant but not as serious. Green has included with his complaint a page from a wildlife education website, which states that groundhogs can carry rabies and hepatitis. ([1], at 21-22.) That same wildlife website also states that "[u]sually, these critters [groundhogs] keep to themselves and do not bother anyone." http://www.wildlifeanimalcontrol.com/groundhogdisease.html.

The court notes two district court cases where claims involving groundhogs and skunks survived initial review. *See Thomas v. Studer*, No. 16 C 8718, 2018 WL 5024957 (N.D. Ill. Oct. 17, 2018); *Buchanan v. Pfister*, No. 17 CV 8075, 2018 WL 4699778 (N.D. Ill. Oct. 1, 2018). Both

3

of those cases differ from this one. In *Thomas*, the inmate alleged that there were "birds and vermin in the inmate living units, fecal matter throughout the living units, and the presence of spiders, groundhogs, skunks, and black mold," and that "'groundhogs and skunks' [we]re 'mixing with prisoners.'" *Thomas*, 2018 WL 5024957, at *2-3. The groundhogs and skunks were thus part of a much larger problem, and the combination of the adverse conditions supported a constitutional claim. *Id.* In *Buchanan*, the plaintiffs (two Stateville inmates) alleged: a groundhog infestation so great that "20 or more" can exist on walkways that are "lined with fences on either side"; "animal parents [that] are especially aggressive in protecting their young"; and "[s]ome . . . animals have open wounds and visibly festering infections." *Buchanan*, 2018 WL 4699778, at *2. Also, the plaintiffs' alleged harm—that they were sprayed by a skunk and one inmate "began to choke, cough, and vomit" and "experienced vision loss, soreness, itching, swelling, and a rash all over his face, throat, and neck," and the other inmate "instantly felt a burning sensation on his face, numbness in his mouth, and extreme nausea"—occurred within two years of filing suit, such that they could seek damages for those injuries. *Id.* at *3. Green's pleadings do not present conditions as serious as those in the two above discussed cases, nor does he state a harm (physical, psychological, or probabilistic) that occurred within the limitations period.

The existence of outdoor rodents at Stateville, even for years, does not by itself support a constitutional claim. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) ("alleging the mere presence of a laundry list of pests, without more, is not sufficient to state a constitutional claim"). Green himself cites just one incident of an attack, which occurred only after an inmate made the foolish decision to pick up a groundhog and "point it" at other innates. This case presents no continuing violation, and Green's claim is untimely.

## **CONCLUSION**

For the reasons stated above, Defendant Randy Pfister's motion to dismiss [22] is granted. The complaint is dismissed with prejudice. Judgment shall enter for Pfister.

If Green wants to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* FED. R. APP. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, he could be assessed a "strike" under 28 U.S.C. § 1915(g). The accumulation of three strikes results in an inmate not being able to file a suit or an appeal in federal court (except a petition for habeas corpus relief), without prepaying the filing fee unless he is in imminent danger of serious physical harm. See § 1915(g). If Green seeks to proceed *in forma pauperis* (IFP) on appeal, in order to pay the filing fee in installments with monthly deductions from his prison trust fund account, he must submit an IFP application in this court, demonstrating not only his inability to prepay the fee but also stating the issues he intends to present on appeal. *See* FED. R. APP. P. 24(a)(1).

Green need not bring a motion to reconsider this court's ruling to preserve his appellate rights. If he does want this court to reconsider its dismissal, he should file a motion under FED. R. CIV. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* FED. R. CIV. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* FED. R. CIV. P. 6(b)(2). The court further notes that a timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the

judgment or order. *See* FED. R. CIV. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* FED. R. CIV. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* FED. R. APP. P. 4(a)(4)(A)(vi).

ENTER:

Date: July 15, 2019

_____
REBECCA R. PALLMEYER
United States District Judge